Good morning. Marty O'Toole on behalf of Appellants Emil Katkin and the Katkin Trust. I'd ask to have three minutes reserved for rebuttal. Okay, watch your clock. The issues before the court are already relatively well briefed. I'd like to touch on a couple of issues that go to the question of whether the court, district court, did in fact duly consider the operative facts in deciding in its award of attorney's fees. This was always a very simple matter that could have and should have been resolved even before any lawsuit was brought. And it began with an 87-year-old, 85-year-old composer learning that the appellees were making use of his compositions and that there were other composers who were given credit for these compositions. There was a date of death that claimed that he had died. And there was some understandable concern as to how that had transpired, as the appellants had no relation with Appellee. In order to preserve, or even before the lawsuit was filed, letters were sent asking for information. Can you please explain to us how it is that you are making use of our compositions and why is it that these people are being credited with these compositions when they're our compositions? We've composed them, et cetera. There was minimal response basically saying we have the rights in these compositions. That was correct, was it not? Yes. As it turned out, it was correct. I mean, isn't there some responsibility on his part to know what he's doing, to put it bluntly? I mean, if he had unloaded these things to other people, then he starts a lawsuit and he says, well, everybody else has a responsibility to remind me what I did. Well, I think that would be a good point, except for the fact, I suppose, that 50 years had transpired in between  and that there, I think you can pretty much clearly see that there was no knowledge of this having been sold. But then once he found out what the situation was, an amended complaint was filed. And that's, I think, what got Judge Rafiti upset. And that amended complaint was my responsibility, and that was done because of the attempt to try and preserve the State law course of action. I went and researched the tolling issues, thought that it was prudent to follow the Court's direction to amend the complaint as it asked to do, rather than simply not amending the complaint. We thought, as I made clear in our papers, that we had a settlement, an agreement. We had about two days to sort of decide. I confer with my client. This is at the very end, though. This is in January, two months before the end of this case. Almost all of the attorney's fees were from the time before that. But at that point, in speaking with my client, it was my, I take responsibility for filing that amended complaint. And, again, it was done to try and preserve the issues. And it's very clear from our contentions of law. In fact, it's very clear from my representation before the Court that the question of copyright was no longer an issue, but that it was my sense that we had to preserve the other issues, given that we didn't have a settlement, even though we thought we had a settlement. We tried from beginning to end to resolve this. I was brought on basically to resolve this. My first phone call was, can we meet? The phone was hung up, basically. We don't know who you are type of thing. And it was a continuous sense of how can we resolve this. It's real simple to resolve this. There's accreditations that need to be corrected. There's a date of death that needs to be corrected. And some understanding as to how it is that you are making use of these compositions. That could have been provided at any stage. It could have been provided. Were you attempting to resolve all these things informally without the need to file an amended complaint? Yes, yes. Before that, the amended complaint was filed on January 1st. Before then, if you look at the letters, I mean, just voluminous. Can we meet? I went to their office in May. This is about May of 2006. And what was it that triggered your belief that you had to file the amended complaint to keep all of this alive? I'm not quite sure I understand. When I – there were other defendants, for one. There also was the question of the composer accreditation. That was not – had not been corrected. So I sought to add, imperfectly for sure, to the amended complaint, I added these state court causes of action to try and preserve them. So because of – if we didn't, I thought the tolling issue, which are very confusing to me even to this day, whether we would lose the right to be able to – if we lose all that time that the lawsuit had been brought, the dependency of the lawsuit before. So it was that issue, trying to get corrected, the issue of the fact that my client had been represented. Were all these other issues monetary issues that might have benefited your client in dollar terms? Yes. Because of the fact that Applees, they submit cue sheets to these performing rights societies, they pay out royalties to the composers based on what's submitted. So if – So the failure to do what you were asking be done might have hurt your client's financial interest or somebody else's? My clients. Because if, for example, they say that somebody else was the composer for a composition and they submit that to BMI, let's say, and that person would then get money, as my client has gotten over the years, from BMI or ASCAP, the different performing rights societies. And so, yes, there was a – Even though he'd sold off the copyrights? Yes. Even though he sold the copyright, you still get the composer royalty rights, and they continue to this day. And so there was, during the course of this litigation, many opportunities, initial disclosures to provide the proof of purchasing documents. My client sought to get out. He filed a request to dismiss the matter. He was objected to. Did the other side have any financial disincentive to straighten out the things that you said were wrong? How would this affect them in the pocketbook, if at all? I don't think there was any disincentive. I think they could have easily provided the information, came across the street, officers are across the street, here's the proof of purchase, let's resolve this. It could have been done in 10 minutes, and it should have been done in 10 minutes. I'd ask to reserve the balance of my time. Thank you. Good morning. Stephen Mick, Bacon, Gump, Strauss, Hauer, and Feld on behalf of the appellees. Unless the Court has any specific questions for me, I submit that this is a fairly straightforward  I have a lot of questions. First of all, why didn't you just hand over the 1958 agreement even before the lawsuit was filed? You could have avoided all of these hundreds of thousands of dollars of attorney's fees. The answer, Your Honor, lies in the history of the other claims. Well, do you think those claims are really even relevant? I mean, was it even appropriate for you to argue other cases beyond the scope of this case in trying to get attorney's fees in this case? Yes, Your Honor, because the standards for evaluating attorney's fees in a copyright claim under the Ninth Circuit include a series of factors that the Court has recognized in prior cases. The Maljack case is the one that we cite in our briefs, and amongst those claims are motivation and the need for deterrence. Well, now, do you think that your clients' and your firm's activities did anything to deter litigation in this case or deter the cost of litigation? The defense that we put forward here, Your Honor, we believe was designed to stop a series of frivolous lawsuits filed over many years. And, in fact, we think that it had exactly that effect. In a case that is, I think, before this Court on a related case. I do not think that would be even relevant. And certainly, you didn't file anything about it. Certainly, Judge Raffitti didn't consider that case. Your Honor, I submit that I cannot personally think of any meaning of the term deterrence in the context of the factors for evaluating attorney's fees, other than in connection with the need to deter the bringing of unsubstantiated claims. Well, you still haven't told me why. I mean, we're talking about litigation filed in 2006. And you had an agreement written and a statement 50 years earlier. Apparently, this plaintiff had written many music cues. And if you had just given him the document, as soon as you did, the attorney admitted to Judge Raffitti they had no copyright claim. I disagree, Your Honor. The record shows that the attorney filed an amended complaint suing my clients for copyright infringement after he had the document in question. I submit the record also shows that the attorney in question filed another complaint in the central district in the loose matter, which is also before the Court, and subsequently has filed a State court action also on behalf of this plaintiff. Well, but I don't – you still haven't answered my first question. Why didn't you, even before this lawsuit was filed, turn over the 1958 agreement? Strategically, Your Honor, our view was that the plaintiff was bringing a series of bad faith actions based upon very nebulous claims to ownership, and that if we told him in advance these are the exact boundaries of the claim that you gave up, there would be a near certainty that the next lawsuit he filed would make an allegation right outside of that boundary. Well, maybe he'd be right as to what's outside of the boundary of the assignment. It was – it was our considered judgment that the pattern of the – Whose our? Whose our? Are you talking about the lawyers? My clients, with the advice of their counsel, having faced now five separate lawsuits from this gentleman and his cohorts, were of the view that this is a pattern of bad faith litigation, and it needed to stop. And this is how we stopped it. You know, I really don't understand that. I don't understand why you couldn't have stopped it by saying, here's the agreement. You assigned these things 50 years ago. You file this, and we're going to bring Rule 11 action against you. We're going to, you know, sue you for something else because you know or – I mean, you could have told him in advance. You could have done something else besides have four attorneys billing hours around the clock, taking up Judge Rafiti's time, taking up the resources of the court in pursuing your own strategy. With respect, Your Honor, we did tell him in advance, and the record reflects that as early as January of 2003, we advised him in writing with respect to the fact that he had transferred all of these claims. It's in the supplemental experts' record. You had the agreement. Why didn't you give him the agreement? Because our history with him in the 2003 action and in the loose action demonstrated that he would make up a new claim. We wanted to depose him first. Is it true that on May 24 – I'll give you a specific date – Kadkin's new counsel was invited to CMA's counsel's office with the assurance that a copy of the 58 agreement would be given to him? And when people got there, then it was withheld? No, Your Honor. What happened then on that day? The – I do not know what happened on that specific day. Was the 58 agreement delivered on May 24th when counsel came to your – to the office? We offered to produce our documents in conjunction with our properly served requests that he appear and give sworn testimony and a deposition. He refused to comply with his discovery obligation to appear and produce his documents. He sent his counsel to take what he could get from us. We viewed that as a litigation strategy. We went before the court. So you fought fire with fire. We did. And we went before the court and the magistrate, and the magistrate agreed with us. Twice the magistrate agreed with us, having viewed the entire record in this case, and ordered Mr. Cadkin to appear. The very specific issue that you have alluded to, the question of whether we had to produce the 58 agreement before his deposition was before the magistrate, and the magistrate on the record stated that I did not have to produce the 58 agreement until this gentleman testified, because the magistrate, with the full benefit of the record, concluded that the justifications were appropriate. Judge Raffitti reviewed that and also, with the full benefit of the record, concluded that we had acted properly and that we were justified because of a concern of bad faith litigation here. Didn't Judge Raffitti have to make a determination that the other claims were related to the copyright claim in order to award, to make the award that he did? It doesn't seem that he made that decision. I agree, Your Honor, that under traditional cat and law of the circuit, that that is the overarching test. Right. It must substantiate the question of whether he must specifically find that or not in a case where the record reveals that the other claims are grounded in the same set of facts and circumstances and allege with relative specificity that the same basic alleged wrongdoing is part of the allegation, the gist of the allegation, if you will, for all of the claims. I would submit that when you have a case where there is a finding in the record that several of those claims are preempted by the copyright claim, that they are, in fact, disguised copyright claims, that they may be converted to a copyright claim, that the record supports, I think without substantial dispute, that they are related. The test in the predicate cases underlying traditional cat and the prior statutory fee cases on which it relies are based on whether or not the claims are grounded in the same operative set of facts as opposed to a sort of a completely severable set of facts. So what did you conclude? That this Mr. Katkin and his counsel were simply trying to extort money out of you? That is exactly what we concluded. With phony claims? Yes. Based on entire history, not just this case? That is correct. Thank you. A couple of quick things. Firstly, as far as the 2004 meeting, I was promised that I would receive a copy of the purchasing documents at that meeting, and I went there, and Tuneem Chisholm, one of his associates, left the room and said, can you give it to me? Well, why are we getting into this in this Court? This seems like information that ought to be vetted before the magistrate judge if it hasn't already been, and if it hasn't, why hasn't it? I'm sorry? You have all of it before the district court. Well, we didn't have an oral argument or an evidentiary hearing as far as before the district court. Do you make any proffer to Judge Raffiti? Are any of these facts that we're going through? I've litigated a lot of cases, and I know there are a lot of problems in discovery disputes and the fire-with-fire strategies. I know when I was on your side of the bench, the judges weren't very responsive to our complaints, even though we felt terribly aggrieved and thought we were right. But at the appellate level, it's a little difficult for us to engage in post-hoc fact-finding. So I'm looking for something in the record that we can look to to justify your arguments that you were horsed around and you or your side didn't have any culpability in it. I believe you need only look just to the letters that were sent before, and I can assure this Court, on my honor, there was not any attempt to extort money or to extort us. I don't take those words, extortion, but I'm looking for facts, and I don't feel like, you know, facts that were presented below, not stuff that we're supposed to second-guess up here. In the opposition to attorney's fees, we set out all of the history of this case. The 2003 case that counsel points to, they weren't even a party to that, firstly. Magistrate Worley, she was there. She saw very clearly. She ordered them to provide this document. I had presumed that Magistrate Worley, her, she waited. The counsel's representation to us that the magistrate judge, I don't know which one he was referring to, heard this dispute and said they didn't have to produce it until your client gave his deposition. Is that wrong? No, that is correct. But she ordered them to, yes, she ordered that they provide at the end of the deposition. We brought the motion to compel. Their first motion to compel, she ordered them to provide the documents. We had to bring a motion to compel because they wouldn't provide it. She said, fine, here's what we'll do. You can have a deposition, but you must give it to him at the end of that deposition. And 10 days after that, you must come back to me to be able to make sure this was complied with. That also wasn't complied with. My sense of Magistrate Worley was that she was on to what was going on and she was not quite happy, but she gave them the benefit of the doubt. So we don't know. It's a little bit complex. We'll give you the benefit of the doubt, but you must give this document and give it soon. It's been a long time already. And why wasn't it produced? That is, you complied with what your side was supposed to do and they still didn't produce it? Yeah, we complied completely. We were told to have a deposition within a week. We did everything we were supposed to do from beginning to end in good faith, and the record is very clear about that. Thank you very much. All right. Thank you, Counsel. Kedkin v. Carlin Productions will be submitted. We'll take up Tradewind Products v. Hartford Fire Insurance Company.
judges: Trott, Wardlaw, Fisher